**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

**TERRY Z. HOY,**

        **Plaintiff,**

**v.**                              **CIVIL ACTION NO. 4:05cv139**

**CARLOS M. GUTIERREZ,**
**SECRETARY OF COMMERCE,**

        **Defendant.**

**<u>MEMORANDUM OPINION &amp; ORDER</u>**

Before the Court is a Motion for Attorney's Fees and Bill of Costs by Plaintiff Terry Z. Hoy ("Plaintiff"), pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, 42 U.S.C. § 1988, and Title VII of the Civil Rights Act of 1964. Plaintiff's claims in the underlying lawsuit arose from an alleged breach of settlement agreement that Plaintiff entered into on or about June 3, 2004, with the United States Department of Commerce ("DOC"), headed by Defendant Carlos M. Gutierrez ("Defendant"). Following the parties' agreement to settle shortly after the final pretrial conference, the Court issued an Order of Dismissal on November 27, 2006. Plaintiff timely filed the instant motion on December 22, 2006, seeking attorney's fees of $9,681.45 and costs of $250, amounting to a total of $9,931.45. As Defendant has filed a response objecting to Plaintiff's request as unreasonable, the motion is ripe for resolution. For the reasons contained herein, the Court **GRANTS** Plaintiff's motion in part and awards $250 in costs and $6,600 in attorney's fees.

## I.    FACTUAL BACKGROUND

On or about June 3, 2004, Plaintiff and Defendant entered into a Settlement Agreement to resolve Plaintiff's claims of racial discrimination and retaliation that occurred while he was employed with the National Oceanic and Atmosphere Administration ("NOAA"), an agency contained within the DOC.[1]  After learning that Defendant had not satisfied all the terms of the Settlement Agreement, Plaintiff pursued several administrative remedies.  First, Plaintiff filed a complaint with the DOC, which thereafter conducted an investigation of his allegations.  On January 14, 2005, the DOC issued a Final Agency Decision finding that Defendant was in compliance with the terms of the Settlement Agreement and that Plaintiff was not entitled to relief.  Second, on or about February 13, 2005, Plaintiff filed a Motion to Enforce Settlement Agreement with the Equal Employment Opportunity Commissioner ("EEOC"), after which, on June 20, 2005, an EEOC Administrative Law Judge disagreed with the DOC and found that Defendant was not in compliance with the Settlement Agreement.   Finally, after Defendant failed to respond to the EEOC findings, Plaintiff filed a Complaint to this Court on September 29, 2005, alleging Defendant's failure:

(1)    To rescind the decision to remove from the Plaintiff's "Official Personnel File" the "Complainant" and all references to that decision.

---

[1] Although neither party has informed the Court of the law under which Plaintiff initially stated claims of racial discrimination and retaliation, both parties have specified in their respective motions that Plaintiff's claims originated under Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e et seq.  Moreover, the Settlement Agreement provides that the parties "voluntarily agree to resolve the allegations of discrimination (race) and retaliation," and that Plaintiff "waives any and all rights and claims arising from Complainant's formal complaint under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., as amended, the Rehabilitation Act, 29 U.S.C. § 791 et seq., as amended, and/or the Age Discrimination in Employment Act, 29 U.S.C. § 633a et seq., as amended, as applicable."  Def.'s Resp. Mot. Ex. A at 2.

      (2)      To correct the Plaintiff's Social Security Number "on all documents;"

      (3)      To correct "all government files to the extent required;" and

      (4)      To correct the Plaintiff's sick leave balance, which is allegedly deficient in the amount of thirty (30) hours of annual leave, and seven years of credit for time the Plaintiff served in the United States Army.

Compl. ¶ 10.  Plaintiff did not request any monetary relief.

Although the Defendant initially filed an Answer denying that Plaintiff was entitled to any relief, the parties finally settled the claims in Plaintiff's favor.  The Court entered an Order of Dismissal on November 27, 2006, dismissing Plaintiff's claims with prejudice, but preserving his right to file a claim for attorney's fees and costs within thirty days of the Order.

Plaintiff timely filed the instant motion on December 22, 2006.  Defendant filed a Motion for Extension of Time to File Responsive Memorandum on January 5, 2007, and subsequently filed a Response to Plaintiff's Motion for Award of Attorney's Fees and Costs on January 10, 2007.  To properly address Plaintiff's motion on the merits, the Court hereby **GRANTS** Defendant's outstanding motion for extension of time, and hereby deems Defendant's Response as timely filed.

## II.    ANALYSIS

### A.    Legal Framework

The parties do not dispute that Plaintiff, as the "prevailing party,"[2] may be entitled costs and attorney's fees pursuant 42 U.S.C. § 2000e-5(k), which provides as follows:

---

[2] Although the parties in this case settled Plaintiff's claim prior to trial, a party need not win a full trial on the merits to be deemed the prevailing party: "Courts have uniformly . . . awarded attorney's fees . . . to plaintiffs who have successfully terminated litigation by settlement prior to trial." McManama v. Lukhard, 464 F. Supp. 38, 41 (W.D. Va. 1978), aff'd, 616 F.2d 727 (4th Cir. 1990).

> In any action or proceeding under this title [42 U.S.C. §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k) (2006).  The purpose of allowing plaintiffs to recover a reasonable attorney's fee is to "ensure effective access to the judicial process for persons with civil rights grievances."  Hensley v. Eckhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937 (1983) (quotations omitted).  As such, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  Id. (citing S. Rep. No. 94–1011, at 4 (1976) (quoting Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S. Ct. 964, 966 (1968))).

Both parties concede that Plaintiff may recover costs and attorney's fees arising in this action if the Court, in its discretion, finds that such an award is appropriate.  Def.'s Resp. Mot. 7; Pl.'s Mem. Mot. Att. Fees 3.  Thus, the only issue before the Court is whether Plaintiff's request for $9,681.45 in attorney's fees and $250 in costs is reasonable and appropriate.

"The amount of the fee . . . must be determined on the facts of each case," and "the level of a plaintiff's success is relevant to the amount of fees to be awarded."  Hensley, 461 U.S. at 430, 103 S. Ct. at 1937–38 (1983).  In arriving at a reasonable attorney's fee, courts look to the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the damages involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. Id. at 430 n.3, 103 S. Ct. at 1937 n.3 (citing Johnson v. Georgia H'way Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)); see also S. Rep. No. 94-1011, at 4 (1976).

A court may embark upon determining a "reasonable attorney's fee" by utilizing the reasonable hours expended and a reasonable rate:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

Id. at 433, 103 S. Ct. at 1939 (emphasis added). Thus, determining the product of "reasonable hours times a reasonable rate" is the first inquiry. It is not the final inquiry, however, and "[t]here remain other considerations that may lead to the district court to adjust the fee upward or downward," Id. at 434, 103 S. Ct. at 1940.

### B.    Objections by Defendant

Defendant's first objection pertains to the nonpecuniary nature of Plaintiff's recovery in the underlying settlement. As Plaintiff is currently employed in the United States Army earing approximately $57,453 yearly, the additional thirty hours of leave equates to a dollar value of approximately $828 (assuming a weekly income of $1,105 and a forty-hour work week). Although not explicit, Defendant implicitly argues that the attorney's fee should bear a reasonably proportional relationship to the damages recovered.

Defendant next challenges Plaintiff's claim for attorney's fees "on the reasonableness of the time expended," as well as the "hourly rate charged by [Plaintiff's] counsel." Def.'s Resp. Mot. 8. The crux of Defendant's argument is that counsel's assistance did not gain anything for the Plaintiff that could not have been gained without litigation, and that the Plaintiff "could have achieved the same result . . . employing common sense rather than the ponderous battleax of litigation." Def.'s Resp. at 7. Consequently, Defendant contends that the Plaintiff's counsel failed to resolve his client's problem "by the most expeditious means." Id.

Finally, Defendant challenges the hourly rates charged by the Plaintiff's counsel, which began at $200 per hour, but rose to $235 per hour on November 21, 2005. Moreover, Defendant disputes the hourly rate charged for paralegal assistance on this matter, which began at a rate of $90 per hour, but increased to $125 per hour on February 15, 2005. According to Defendant, such an inexplicable rate increase is unreasonable.

### C.    Application

Although the Court recognizes the "rule of proportionality" may apply to the calculation of attorney's fees, such a limiting mechanism is not controlling in civil rights cases filed under § 1988, such as this case. Riverside v. Rivera, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694 (1986) ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."). Consequently, the Court will not deny Plaintiff's requested attorney's fees simply because the relief ultimately recovered in this civil rights action was

nonpecuniary.  To adequately promote Congress' intent to provide victims of civil rights violations with effective access to the private legal market, the Court will only consider Plaintiff's recovery as a single factor among others in arriving at a reasonable attorney's fee.

Nevertheless, Plaintiff is still limited to recover only a <u>reasonable</u> attorney's fee, and the civil rights character of this case does not give Plaintiff carte blanche to demand excessive fees. In addition to considering Plaintiff's ultimate relief recovered, the Court will also consider the reasonable time expended and rate charged by counsel to arrive at a reasonable attorney's fee.

In this case, Plaintiff recovered thirty hours of annual leave credited to his account, amounting to approximately $858, based on his current salary.  Additionally, Plaintiff is entitled to have his personal information corrected on a number of employer documents.  All in, Plaintiff's relief is certainly of substantial value, but, in this Court's estimation, no greater than $5,000.  Nevertheless, Plaintiff requests attorney's fees amounting to $9,681.45.  As part of this calculation, Plaintiff submits a paralegal expense of $1,506 for thirteen hours of work.

This Court has spent considerable time calculating attorney's fees.  Although patent and trademark cases with vast discovery issues invariably call for sanctions while civil rights cases require an abundance of background understanding always involving attorney's fees.  This Court has passed on attorney's fees for some of the most revered lawyers not only this state, but in the country.  It is therefore significant that, in this Court's experience, the weighted average of $115.85 for a paralegal's services (3.40 hours at $90 per hour and 9.60 hours at $125 per hour) exceeds even those rates charged by paralegals with medical, technological, and accounting expertise.  Assuming Plaintiff's counsel requires the paralegal to bill 1,400 hours per year[3] at a

---

[3]  Which is lower than most billable hour requirements of large firms.

rate of $125,[4] the law firm would stand to earn a gross of $175,000.  Even if the paralegal earned

a yearly income of $100,000 and $20,000 in benefits—a compensation package that is highly

unlikely—the firm would realize an exceptional margin of nearly 32%.

The Court has trouble requiring Defendant to bear such a burden.  First, the hourly rate of

$125 is high for southeastern Virginia.  Second, the Court is doubtful that thirteen hours of

paralegal service was necessary to resolve this relatively straightforward employment record

dispute.  This case was not difficult, particularly because it concerned a settlement agreement

concerning a prior claim.  It is simple to correct a social security number.  The sick leave

miscalculation of thirty hours is easily remedied.  The removal of certain references in a

personnel file is also not difficult.  Merely filing a complaint resulted in settlement of this case.

Although bureaucratic procrastination and ineptitude are somewhat rare, their presence

does not surprise this Court.  Simple problems require simple solutions and do not require

extensive research or elaborate pleadings.  In this case, Plaintiff's decision to obtain an enforcer

(i.e., the Court) alone created the solution.  Filing the Complaint with appropriate allegations

especially where prior findings were in place was neither difficult nor onerous.  Although legal

action was necessary to resolve this matter, as Plaintiff was unable to secure relief by the

appropriate administrative procedures, the issue ultimately decided was neither complex nor

factually ambiguous.

---

[4] It is revealing that an employee earning $125 per hour for a forty-hour workweek would take in $260,000 per year, or approximately $100,000 more than a federal judge's salary.

In light of the foregoing, the Court **GRANTS** Plaintiff's motion in part, and will award courts costs of $250 and a reasonable attorney's fee of $6,600, or a total of $6,850, which exceeds by eight times Plaintiff's recoverable money damages.

The Clerk of the Court is **DIRECTED** to mail a copy of this order to all counsel of record.

**IT IS SO ORDERED.**

_____/s/_____

Robert G. Doumar
UNITED STATES DISTRICT JUDGE

February 28, 2007
Norfolk, Virginia